## JOE GOLDEN v. STATE.

No. A-3963.   Opinion Filed April 28, 1923.
(214 Pac. 946.)

(Syllabus.)

1.    Evidence—Trial—Testimony of Witness Taken at Preliminary Trial Without Showing Diligence to Produce Him Inadmissible— Right to Confront Witnesses. Where the showing, and the only showing, made by the state as a condition precedent to the introduction of the testimony of a witness taken at the examining trial, was that the subpoena issued for the witness was indorsed, "not found," and where there was no showing that the witness was dead or beyond the reach of the court's process, or that he was sick and unable to be present at the trial, and no proper diligence was shown to procure his attendance, the admission of the testimony of such witness taken at the preliminary trial, over the objection of the accused, was error.

   a.   If such witness can be produced at the final trial, the defendant has a right to be confronted by the witness.

2.    Trial—Remarks of County Attorney Calculated to Inflame Jurors Against Defendant Because of His Race Improper. It is improper for a county attorney, in his argument to a jury, to go outside the record and misquote the Scriptures in a manner calculated to inflame and prejudice the minds of the jurors against a defendant because he is a Jew.

   a.   The verdict of a jury should be predicated upon the evidence produced at the trial, free from racial or religious prejudices, in so far as the courts are able to accord such trial.

Appeal from District Court, Payne County; Arthur R. Swank, Judge.

Joe Golden was convicted of grand larceny, and he appeals. Reversed and remanded.

J. M. Springer and E. G. Wilson, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J.   Joe Golden, plaintiff in error, hereafter referred to as the defendant, was by information filed in the district court of Payne county on January 2, 1920, charged, together with other codefendants, with the larceny of a large

quantity of oil well pipe or casing. At the trial, on October 13, 1920, the jury rendered a verdict finding the defendant guilty and fixing his punishment at a term of five years in the penitentiary. From a judgment on the verdict he appeals.

The facts shown in evidence leading up to the commission of the alleged offense and attending its consummation have been stated in sufficient detail in a companion case just decided by this court, Filler v. State, 23 Okla. Cr.——, 214 Pac. 568.

In this case the Attorney General has confessed error for three reason, to wit: .

First. Because a transcript of the testimony of the witness J. B. Turner taken at the preliminary hearing was improperly received as evidence.

Second. Improper and prejudicial remarks made by the county attorney in the course of his argument to the jury.

Third. The reception of alleged hearsay, self-serving declarations of the witness Turner made to the sheriff and others, advising them that the theft was about to be committed, and that preparations were then in progress to commit it.

The reason last given by the Attorney General was decided adversely to his contention in the Filler Case, supra, in which the reasons for so holding are fully discussed and need not be repeated here.

The showing, and the only showing, made by the state as a condition precedent to the introduction of the testimony of Turner taken at the examining trial was that this case was set for trial on the 11th day of October, 1920; that on the 4th day of October the county attorney caused the clerk to issue a subpoena for the witness J. B. Turner; that on the

following day, October 5th, said subpoena was by the sheriff returned, with the indorsement, "Not found." There was no showing that Turner was dead or beyond the reach of court process, or that he was sick and unable to be present at the trial; and no proper diligence was shown to procure his attendance.

The rule admitting a transcript of the evidence of an absent witness as his deposition on final trial grows out of circumstances of necessity, and such transcript or deposition should be excluded in all cases where the witness can be procured in person. One of the reasons for this is that the accused may desire to cross-examine the witness further, and the jury, if it be possible, should have the opportunity to observe the witness and his demeanor on the witness stand. This question was treated at length in, the case of Davis v. State, 20 Okla. Cr. 203, 201 Pac. 1001, in which the limitations of the rule were discussed and stated, supported by authorities there cited and in harmony with statements made herein. It frequently happens that the cross-examination of a witness at a preliminary trial is more or less perfunctory, and that by the time the cause comes on for final trial the defendant is better able, by reason of more time and research, to conduct a thorough cross-examination. If the witness can be produced at the final trial, it is therefore the right of the defendant to have him present. A reasonable, diligent effort to produce the witness, made in good faith, should be shown. For further observations and authorities, see Davis v. State, supra.

The claim is made that there was misconduct on the part of the county attorney in his argument to the jury. The county attorney, assuming probably from the appearance of the defendant that he belonged to the Hebrew race, in his argument to the jury said:

"We all know the way of Jews' dealings in business and having their business dealings. * * * These are God's chosen people, who the Bible says shall gather into their arms all the wealth of the world."

The remark so made and others were objected to by the defendant at the time they were made, the objections were by the court overruled, and exceptions allowed the defendant.

The spirit of our law is opposed to any discrimination against an accused because of his race, religion, wealth, or social station, and we think it was highly improper for the county attorney to go outside the record and misquote the Scriptures in a manner calculated to inflame and prejudice the minds of the jurors against this defendant because he was a Jew, if indeed he did belong to the Jewish race. It should make no difference whether an accused is a Jew, an Englishman, a Frenchman, or a native American citizen. The verdict of a jury should be predicated upon the testimony produced at the trial, free from racial and religious prejudices, in so far as the courts are able to accord such trial.

If from the whole record it appeared that this was the only error which occurred at the trial, we might assume that this error was not necessarily prejudicial; but, considering this error along with others mentioned appearing in the record, we think the confession of error by the Attorney General should be sustained, and the cause reversed and, remanded; and it is so ordered.

MATSON, P. J., and DOYLE, J., concur.